UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PATRICIA SANDERS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:18-CV-1418-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Patricia Sanders ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 14. Plaintiff also filed a reply. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion (ECF No. 8) is **DENIED**, and the Commissioner's motion (ECF No. 14) is **GRANTED.**

## BACKGROUND

In July 2009, Plaintiff protectively filed an application for SSI under Title XVI of the Act, alleging disability based on anemia, ulcers, and a uterine fibroid tumor. Transcript (Tr.) 247-49, 265. Her application was denied, and she requested an administrative hearing (Tr. 91, 124-25). In November 2011, following a hearing, an administrative law judge ("ALJ") found Plaintiff not disabled. Tr. 95-100. In June 2013, the Appeals Council remanded Plaintiff's case for additional proceedings. Tr. 95-100, 107-08. Following an additional hearing, the ALJ again found Plaintiff

not disabled in January 2015. Tr. 11-17. Plaintiff sought review of that decision in this Court, and in November 2016, the parties agreed to remand Plaintiff's case for additional proceedings, which this Court approved. Tr. 11-17, 712, 713, 716-18.

A third hearing was held before Administrative Law Judge Timothy M. McGuan (the "ALJ") on July 11, 2018, in Buffalo, New York. Tr. 665. Plaintiff appeared and testified at a hearing and was represented by Jeanne Murray, an attorney. *Id*. Eric D. Dennison, Ed.D., an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. The ALJ issued an unfavorable decision on August 20, 2018, finding that Plaintiff was not disabled. Tr. 665-76. The Appeals Council did not exercise jurisdiction over that decision, and the ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his August 20, 2018 decision:

1. The claimant has not engaged in substantial gainful activity since July 13, 2009, the application date (20 CFR 416.971 *et seq.*);

2. The claimant has the following severe impairments: obesity, plantar fasciitis and heel spur, hypertensive heart disease, sciatica, uterine fibroids status-post hysterectomy, and duodenal ulcer status post-surgical repair (20CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)[1] except sit and stand at will, and never be exposed to pulmonary irritants such as smoke, fumes, dust, and odors;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on February 25,1967 and was 42 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963);

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a);

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 13, 2009, the date the application was filed (20 CFR 416.920(g)).

Tr. 665-76.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on July 13, 2009, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 676.

## **ANALYSIS**

Plaintiff argues that the ALJ erred in assessing her RFC because the ALJ accorded too much weight to the opinions of Plaintiff's treating family physician Bidappa G. Maneyapanda, M.D. ("Dr. Maneyapanda"). *See* ECF No. 8-1 at 14-19. Plaintiff claims that the ALJ should not have accorded Dr. Maneyapanda's opinions weight because his opinions were too old to reflect that her conditions had deteriorated. *Id*. The Commissioner argues in response that Plaintiff's argument is without merit because the record did not show deterioration, and Plaintiff repeatedly admitted to Dr. Maneyapanda that she had no new complaints. *See* ECF No. 14-1 at 16-17. Further, argues the Commissioner, Plaintiff had mild-to-minimal findings on diagnostic imaging; she improved from surgical procedures; she was prescribed mostly conservative treatment; and she had normal exam findings, all of which reflected limitations consistent with the ability to perform light work. *Id*. at 17.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

5

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. Upon review of the record, the Court finds the ALJ discussed the evidence of record, including the clinical findings and the medical opinions, and such evidence reasonably supported the ALJ's conclusion that Plaintiff had the RFC to perform light work with the noted exceptions. Accordingly, the ALJ discharged his duty to formulate an RFC finding that properly accounted for all of Plaintiff's credible limitations, as supported by the record.

## I. The ALJ Properly Considered Dr. Maneyapanda's Opinions.

Dr. Maneyapanda, Plaintiff's treating primary care physician, completed two New York State Office of Temporary and Disability Assistance forms during the relevant period. Tr. 484-85, 564-65, 674. In the first form, completed in January 2010, Dr. Maneyapanda said that Plaintiff was "very limited" in her ability to walk, stand, push, pull, bend, lift, and carry, and had no evidence of limitation in her ability to sit, climb stairs, or use her hands. Tr. 484. In the second form, completed in April 2012, he said that she was "moderately limited" in her ability to lift, carry, push, and pull, and had no evidence of limitation in her ability to walk, stand, or sit. Tr. 564. Additionally, he said that she was still able to climb stairs and could use her hands without limitation. *Id.*

The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he

6

must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

The ALJ gave Dr. Maneyapanda's opinion forms some weight because the physician had a long-term treating relationship with Plaintiff. Tr. 674. *See* 20 C.F.R. § 416.927(c)(2) (2016) (generally, a treating source's opinion is given more weight because of his "detailed, longitudinal" relationship with the claimant). The ALJ also observed that, while his opinions appeared to contradict each other, in that the latter reflected that Plaintiff had fewer limitations, the opinions suggested that Plaintiff's limitations had improved, which supported the conclusion that she could perform light work. Tr. 674. Resolving such conflicts in the medical evidence is within the purview of the ALJ. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2012) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("[g]enuine conflicts in the medical evidence are for the Commissioner to resolve")).

Plaintiff claims that the ALJ should have afforded Dr. Maneyapanda's opinions less weight because they were stale, and there were no medical records to support the RFC. *See* ECF No. 8-1 at 14-19. Plaintiff points to four areas in her argument. Specifically, Plaintiff alleges that because

Dr. Maneyapanda's opinions were from 2010 and 2012, they were outdated and failed to address the worsening of her: (1) hypertensive heart disease; (2) abdominal pain; (3) back pain; and (4) foot pain. *See id*. However, Plaintiff's allegation that her conditions worsened such that she could not perform the range of light work supported by Dr. Maneyapanda's opinions is contradicted by the record. She repeatedly told Dr. Maneyapanda that she had no new complaints. Tr. 558, 560, 562, 569, 577, 581, 1060. Additionally, on at least one occasion, Dr. Maneyapanda characterized Plaintiff's complaints as the "usual complaints" (Tr. 568), which does not suggest a worsening of her limitations. And as noted above, Dr. Maneyapanda indicated that Plaintiff's conditions had improved from 2010 to 2012, in that she went from being "very limited" in her ability to walk, stand, and sit, to having no limitation in those areas. Tr. 484, 564. He also said that she went from being "very limited" in her ability to lift, carry, push, and pull, to being just "moderately limited" in those tasks. *Id*. Furthermore, as late as January 25, 2016, Plaintiff told Dr. Maneyapanda she had no new complaints. Tr. 1060.

Plaintiff first argues that her hypertensive heart disease was not a problem when Dr. Maneyapanda provided his treating physician opinion in 2012. Tr. 8-1 at 18. However, the record reflects that except for a few episodes of hypertension, Plaintiff's blood pressure seems to have been well controlled for several years on medication. *See, e.g.*, Tr 831-833 (June 2017), 851-55 (May 2017), 856-62 (April 2017). The same records note normal pulse oxygenation, full strength, normal gait, and only moderately limited range of motion. *Id*. Even Plaintiff rated her hypertension as mild in severity. *Id*. Plaintiff had normal arterial perfusion in July 2009. Tr. 376. Similarly, chest x-rays and an EKG were normal in April 2010; and in July 2013, she had no evidence of an acute cardiopulmonary process. Tr. 495, 496, 600. Records from Mercy Health Center demonstrated very normal blood pressure readings. Tr 891 (September 2017), 895 (April 2016), 898 (December 2015), 899 (June 2015), 905 (December 2014). Other healthcare providers also recorded normal

8

readings. Tr. 929, 938. While Plaintiff did occasionally have moderately high readings, these were few. *See, e.g.*, Tr. 632, 643, 648, 657. Although an EKG showed a non-specific T wave abnormality (Tr. 973), her stress test was negative for myocardial ischemia (Tr. 982); her ejection fraction was reported at 65% (Tr. 985);[2] and a chest x-ray showed no evidence of acute cardiopulmonary process (Tr. 598, 600).

Plaintiff asserts that on April 17, 2017, she began experiencing moderate chest pain, dizziness, dyspnea, palpitations and shortness of breath. *Id*. at 19 (citing Tr. 968). However, a cerebrovascular ultrasound in that same time period showed no significant plaque on the right and less than 50 percent plaque on the left. Tr. 985. Moreover, that same month, a myocardial perfusion study showed ejection fraction of approximately 65 percent. *Id*. This significantly contradicts Plaintiff's claim that her hypertensive heart disease was getting worse. In addition to this evidence, Plaintiff had full pulses, normal respirations, regular heart rate and rhythm, and no edema in her extremities. Tr. 842, 969-70. Furthermore, she testified at the July 2018 hearing that she did not have any difficulty breathing and did not use any inhalers. Tr. 700. The record, therefore, does not show that Plaintiff's hypertensive heart disease had gotten worse.

Furthermore, it is the claimant's burden, not the Commissioner's, to demonstrate the functional limitations she claims. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating by reference 42 U.S.C. § 423(d)(5)(A)); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (it is Plaintiff's burden to establish that she is disabled);

---

[2] A normal ejection fraction (the percentage of blood pumped out of a filled ventricle with each heartbeat) is 55-70 percent. The term "ejection fraction" refers to the percentage of blood that is pumped out of a filled ventricle with each heartbeat. *See Divincenzo v. Comm'r of Soc. Sec.*, No. 1:18-CV-662-DB, 2019 WL 3997312, at *4 (W.D.N.Y. Aug. 23, 2019) (citing *Townsend v. Comm'r of Soc. Sec.*, No. 11-CV-801 JG, 2011 WL 3648346, at *2, n.6 (E.D.N.Y. Aug. 17, 2011)).

9

*Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (finding an ALJ can deny benefits based on a lack of evidence on a matter for which the claimant bears the burden of proof); *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (citations omitted) ("The claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought."). In this case, Plaintiff fails to meet her burden to establish additional restrictions disability as to her hypertension. *Parker v. Berryhill*, No. 17-CV-252-FPG, 2018 WL 4111191, at *4 (W.D.N.Y. Aug. 29, 2018) (holding that a plaintiff bears the burden of showing her RFC is more limited than that found by the ALJ) (citations omitted).

Plaintiff also argues that her foot and back pain deteriorated over time. *See* ECF No. 8-1 at 17-18. However, in May 2017, diagnostic imaging of her back showed only minimal-to-mild abnormalities. Tr. 849-50; *see also* Tr. 863, 874, 1012, 1027 (other mild, minimal, and negative findings on diagnostic imaging of Plaintiff's back). In May 2017, she reported that her back pain is precipitated by heavy lifting. Tr 851. In September 2017, she told her physical therapist that standing, walking or sitting over 20 minutes increased her pain. Tr. 1004. She went to the Erie Medical Center ("Erie") Emergency Department ("ED") in June 2018 for falling in a shower. Tr. 1008. Although she reported back pain, records indicate that Plaintiff had a normal gait (Tr. 1009), and an x-ray of her lumbar spine was unremarkable (Tr. 1011). Even in March 2018, her gait was noted to be grossly normal. Tr. 960. Records also indicate she had no prior limitations or restrictions in reference to her back complaints. Tr. 1008. Although her lumbar MRI demonstrated disc bulges with some mild encroachment in the lower lumbar area (Tr 848-850), her x-rays were normal (Tr. 1050). Thus, Plaintiff's back pain also does not appear to have worsened.

Similarly, Plaintiff's foot pain had not deteriorated. On September 19, 2017, and October 3, 2017, Plaintiff saw podiatrist Barry Fitzgerald, D.P.M. ("Dr. Fitzgerald"), complaining of foot pain. Tr. 890-91, 936-38. X-rays of Plaintiff's feet showed only moderate calcaneal spurring. Tr.

654, 655. In other words, she had heel spurs. *See* Tr. 1036. After Plaintiff rejected Dr. Fitzgerald's recommendation that she try injections to treat her foot pain, he suggested shoe orthotics and dietary changes. Tr. 891, 938. Thus, treatment for Plaintiff's alleged foot pain remained conservative in nature. Tr. 938. "Such a conservative pattern of treatment is an appropriate factor to consider" in evaluating a claimant's complaints of pain. *Jackson v. Berryhill*, No. 16-CV-33 (MAT), 2018 WL 2235166, at *5 (W.D.N.Y. May 15, 2018) (unpublished) (citations omitted). Accordingly, nothing in the record suggests that Plaintiff's foot condition had worsened.

The record also fails to support Plaintiff's claim that her abdominal pain had deteriorated. *See* ECF No. 8-1 at 16-17. Although Plaintiff had laparoscopic ulcer surgery in June 2009 (*see* Tr. 379, 393, 425), her abdomen had no apparent intra-abdominal processes in July 2009. Tr. 445. Similarly, a pelvic Doppler scan was essentially unremarkable in April 2016. Tr. 924. A sonogram of her pelvic area in 2014 is unremarkable except for the notation of the benign cyst. Tr. 927. In February 2017, pelvic and abdominal CTs showed only mild gastric-wall thickening. Tr. 837, 838. In April 2017, her cardiovascular physician noted that her abdomen was soft and non-tender. Tr. 970, 987. Plaintiff's abdomen was also non-tender in May 2017. Tr. 853. In an earlier visit, she stated that the pain had been present for six weeks, and she rated the level of severity as 1 out of 10. Tr 856. Erie ED records in June 2018 noted no genitourinary ("GU") complaints (Tr. 1009), and her abdominal scan was benign (Tr 1013).

In February 2017, Plaintiff had a CT scan of the abdomen and pelvis due to mild abdominal pain. Tr. 945. Although some mild diffuse thickening of the gastric wall was noted, no gallbladder disease was detected. Tr. 946. No acute intrapelvic abnormalities were detected. Tr. 947. Records from June 2017 also note no abdominal problems and full range of motion in the spine with strength of 5/5. Tr. 833. Furthermore, the record reflects that Plaintiff had positive bowel sounds in all quadrants, denied weight-loss or abdominal tenderness, and was treated conservatively with

medication. Tr. 431, 433, 435, 436, 437, 843, 853, 858-59, 898. Additionally, Plaintiff had no vaginal discharge following her February 2014 hysterectomy (Tr. 647, 898), and she had only a simple-appearing ovarian cyst on diagnostic imaging that same month (Tr. 904). Moreover, a gynecologist recommended that she treat the cyst with nothing more than over-the-counter nonsteroidal anti-inflammatory drugs ("NSAIDs"), such as Ibuprofen. Tr. 898, 902, 904; *see also* 893. This evidence fails to support Plaintiff's allegation that her abdominal pain had gotten worse. To the contrary, a thorough review of the records indicates that Plaintiff's overall condition as to abdominal paid did not markedly deteriorate over time.

**II.    The ALJ RFC Finding Was Supported By Substantial Evidence.**

Plaintiff argues that because Dr. Maneyapanda's opinions were stale, the ALJ was without a medical opinion to support his RFC finding, and this case should be remanded for the ALJ to develop the record. *See* ECF No. 8-1 at pp. 19-21. Plaintiff's argument fails for two reasons. First, the Court has already concluded that Dr. Maneyapanda's opinions were not stale. *See Biro v. Comm'r of Soc. Sec.*, No. 6:17CV6098(EAW), 2018 WL 4666068, at *4 (W.D.N.Y. Sept. 28, 2018) ("However, a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age."). As discussed above, the medical evidence remained consistent and supported Maneyapanda's opinions, and therefore, the opinions were not stale. Second, as explained further below, it was not error for the ALJ to reach an RFC finding that did not coincide with a medical opinion.

A claimant's RFC is the most a claimant can still do despite her limitations and is assessed based on an evaluation of the all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-

5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Furthermore, "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [his] decision," because he is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that "the ALJ's RFC assessment did not perfectly match [a medical] opinion, and was in fact more restrictive than that opinion, is not grounds for remand."). Upon review of the record in this case, the Court finds that the ALJ properly considered Plaintiff's impairments, and reasonably found that she maintained an RFC for light work. Tr. 671. The ALJ thoroughly discussed the evidence of record, and his opinion meets the substantial evidence threshold. Although the ALJ noted that Plaintiff does have some pain, he addressed that issue in an appropriate manner and formulated the RFC accordingly.

With respect to Plaintiff's argument that the ALJ should have further developed the record, (*see* ECF No. 8-1 at 19-20), an ALJ's duty to develop the record is not limitless. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (a medical source statement or formal

opinion is not required when "the record contains sufficient evidence from which an ALJ can assess the petitioner's [RFC]."). Most basically, an ALJ need not further develop the record "when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *See Janes v. Berryhill*, 710 F.App'x 33, 34 (2d Cir. Jan. 30, 2018) (summary order (quoting *Perez*, 77 F.3d at 48); *see also Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. Jan. 8, 2015) (summary order) (although an ALJ has a duty to develop the record, where there are no obvious gaps and the ALJ possesses a complete medical history, he is under no obligation to seek a treating-source opinion (citations omitted)). With nearly ten years of medical records, including multiple diagnostic studies, the Court finds there are no gaps in the record in this case.

In her final argument, Plaintiff alleges that the ALJ failed to follow the Appeals Council's March 2017 remand order by not hiring a medical expert, ordering a consultative exam, or re-contacting her treating physicians before deciding her case. makes one last argument regarding the ALJ's written decision. *See* ECF No. 8-1 at 21-22. However, Plaintiff's argument misstates the Appeals Council's remand order. The remand order directed the ALJ to, *inter alia*, "[o]btain additional evidence concerning [Plaintiff's'] impairments in order to complete the administrative record in accordance with regulatory standards regarding consultative examinations and existing medical evidence," and that "the additional evidence *may* include, *if warranted and available*, a consultative examination and medical source statement about what [Plaintiff] [could] still do despite [her] impairments." Tr. 717 (emphasis added).

The record reflects that the ALJ abided by the Appeals Council's order in obtaining additional medical evidence, as the ALJ accepted numerous medical exhibits submitted by Plaintiff (Tr. 829-1086) and held a third hearing, which permitted Plaintiff to provide even more testimony about her limitations (Tr. 687-711). While the Appeals Council's order permitted the ALJ to hire a medical expert, schedule a consultative exam, or recontact Plaintiff's treating physicians, if

needed, he was not required to do so. Whether or not those things were needed remained within the discretion of the ALJ. *See* Tr. 717. As noted above, there are nearly ten years of medical records in this case, and the record was entirely well-developed for a decision. As such, there is simply no need for the ALJ to obtain a consultative exam on any of Plaintiff's claimed disabilities, and there is no merit to Plaintiff's argument that the ALJ should have developed the record further.

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). That is not the case here. More than substantial evidence supported the ALJ's RFC despite Plaintiff's assertions to the contrary.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE